UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| THOMAS KUEMMEL JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-107-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Thomas Kuemmel Jr. seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied him Social Security Disability benefits and erred by (1) failing to give appropriate weight to the Plaintiff's treating physician's opinion, (2) failing to adequately consider the combined effects of his impairments, and (3) failing to credit his work history to enhance his credibility.

**BACKGROUND**

On August 26, 2013, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning on May 1, 2012. (R. 20.) His claims were denied initially on November 19, 2013, and upon reconsideration on February 21, 2014. (*Id.*) On July 31, 2015, the Plaintiff appeared with counsel and testified before an administrative law judge (ALJ). (*Id.*) Marie N. Kieffer, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On

September 1, 2015, the ALJ denied the Plaintiff's application, finding he was not disabled as of his alleged onset date. (R. 20–31.) On January 20, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.)

On March 21, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since his alleged disability onset date, May 1, 2012. (R. 22.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including degenerative disc disease, acute right shoulder pain, affective disorder, anxiety disorder, and obesity. (R. 23.) The ALJ found that these

impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including diabetes mellitus, carpal tunnel syndrome, hypertension, and hyperlipidemia, were not severe impairments. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," § 404.1520(a)(4)(iv), or whether he can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except:

> The claimant can ambulate with use of one cane and is able to maintain balance while using unoccupied upper extremity to lift and carry items; can sit and stand occasionally (1/3 of the work day), changing positions throughout 8 hour workday, but still remain on task and at his duty station while either standing or sitting. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and can never climb ladders, rope, and scaffolds. He can understand, remember, and carry out rote or routine instructions or tasks that require the exercise of little independent judgment or decision-making and can be learned from a short demonstration up to 30 days. He can work jobs that entail only occasional and superficial contact and interaction with co-workers. He can only have occasional and superficial contact with the general public and would not be able to perform a job that entailed work-related interaction and conversations with the

> general public. He could interact and converse with supervisors long enough to receive work instructions, however, he can only work a job that otherwise involves occasional and superficial interaction with his supervisors. He should not work in an environment that is stringently production or quota-based, and thus may not perform fast paced assembly line work. He can meet production requirements that allow him to sustain a flexible and goal oriented pace. He cannot engage in repetitive twisting, bending, or lifting, for example he cannot do an assembly line type of job wherein he must twist, bend, and lift to obtain product from a conveyor belt and package the product.

(R. 25.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 26.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id*.)

The Plaintiff testified that he became disabled in May of 2012 "due to his conditions of nerve damage in the right leg, anger, a history of 2 back surgeries, diabetes, depression, arthritis, carpal tunnel in both hands, and high blood pressure." (*Id.*) The Plaintiff alleged that his back pain prevented him from working in 2010 after his most recent back surgery; that he has problems with his knees; that he has pain in the hip area and down the right leg; that bending, stooping, and heavy lifting aggravate his back pain; that climbing stairs and extensive walking aggravate his knee pain; that he wakes up about three times per night; that he rests in a reclining position for about forty minutes a day; that he lies down two times per day; and that he does not like crowds and is not sociable. (*Id.*) The Plaintiff testified that he could sweep and vacuum, seldom cook, use the internet, drive a car, grocery shop, walk around the block, attend his daughter's softball games, and perform basic financial management tasks such as counting

change and handling a savings account. (R. 28.) The Plaintiff's wife reported that he no longer mows the lawn or does any yard work, that he argues more and gets agitated, and that he is depressed and mean to others. (R. 26.) She also reported that he helps clean for two hours, bi-weekly and can pay attention for the length of a movie. (R. 28.)

Turning to the objective medical evidence, the ALJ gave some weight to state agency physicians' opinion that the Plaintiff could perform medium exertional work with postural limitations because the ALJ found that these opinions were generally consistent with the other evidence of record. (*Id.*) The ALJ gave very little weight to the Plaintiff's treating physician because the treating physician's opinion was inconsistent with his own treatment records and relied too heavily on the Plaintiff's subjective complaints. (R. 29.) The ALJ gave "weight" to a psychological consultative examiner who opined that the Plaintiff had moderate impairments in social and occupation function because the examiner's opinion was based on an in-person examination conducted by a specialist and did not appear to overly rely on subjective complaints. The ALJ also gave great weight to state agency psychological consultants' opinions because they were consistent with the other evidence, and the consultants had extensive program knowledge. (*Id.*)

The ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence, treatment history, and his daily living activities. Thus, the ALJ discounted the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of his symptoms, finding the Plaintiff not credible. (R. 28–29.)

The Plaintiff has past relevant work as a mixing machine tender, machine operator, and buffer. The ALJ concluded that the Plaintiff was not capable of performing past relevant work. (R. 30.) However, relying on the VE's testimony, the ALJ found that "considering the claimant's

age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of his alleged onset date. (R. 31.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it

lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ failed to give his treating physician's opinion controlling weight, failed to incorporate all of his medically determinable impairments into his RFC, and failed to consider his work history in evaluating his credibility.

"An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.") The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). To evaluate credibility, an

ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. "[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska*, 454 F.3d at 738).

In this case, the ALJ discounted the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of his symptoms because (1) it was not consistent with the objective medical evidence, (2) the Plaintiff's treatment history for back pain had not significantly changed since a prior denial of benefits, and (3) the Plaintiff's daily living activities did not support any greater limitations than those described in the RFC. There is no dispute that the ALJ did not consider the Plaintiff's work history when evaluating his credibility. The Commissioner argues that ALJ nevertheless properly considered the evidence and that the credibility determination is supported by substantial evidence, such as the objective medical evidence, the Plaintiff's conservative treatment history, and his daily living activities.

"An ALJ is not statutorily required to consider a claimant's work history, but a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (internal quotation omitted). The Seventh Circuit has criticized the failure to consider a claimant's work history in a credibility determination. *See, e.g.*, *id.*; *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (noting that "a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility"); *Flores v. Massanari*, 19 F. App'x 393, 404 (7th Cir. 2001) (faulting the ALJ for failing to acknowledge that the claimant "had been employed each

year for the thirteen years before his illness"). However, a failure to explicitly discuss a claimant's work history is not, by itself, reversible error. *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Rather, it is "just one factor among many, and it is not dispositive." *Id.* (internal quotation omitted). "As long as substantial evidence supports the ALJ's credibility determination, silence on this factor will not negate that evidence." *Walker v. Acting Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-396, 2017 WL 4174251, at *5 (N.D. Ind. Sept. 21, 2017) (citing *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)). Therefore, the Court must determine whether the ALJ's credibility determination is otherwise supported by substantial evidence.

The Court is unable to meaningfully review the ALJ's credibility determination for multiple reasons. First, the Court "cannot assess the validity of the ALJ's credibility determination because the ALJ did not ask important questions to determine if" the Plaintiff's failure to obtain medical care was "justifiable." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Craft*, 539 F.3d at 679 ("The ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care."). In fact, if an ALJ takes into consideration a claimant's failure to seek treatment in a credibility determination, the ALJ is required to inquire as to the reasons for such failure. *See Murphy*, 759 F.3d at 816 (finding fault where "the ALJ did not ask [the plaintiff] why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program"); *Pitaroski v. Colvin*, No. 213-CV-112, 2014 WL 3687234, at *12 (N.D. Ind. July 24, 2014) (remanding because "the ALJ did not make the requisite inquiry to

9

discover the reasons [the plaintiff] either failed to seek treatment . . . or to take his medications as prescribed"). This is so because "[t]here may be a reasonable explanation behind [the plaintiff's] actions, such as [he] may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects." *Murphy*, 759 F.3d at 816; *Frierson v. Colvin*, No. 2:14-CV-170, 2015 WL 5174058, at *6 (N.D. Ind. Sept. 2, 2015) (finding fault where "[t]he ALJ did not ask Plaintiff about his compliance with treatment, and the credibility section of his opinion [did] not address any reasons for noncompliance, such as inability to afford treatment") (citing *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006)).

An ALJ also cannot draw a negative inference based on a claimant's failure to obtain *adequate* treatment, even if he has sought some treatment during the relevant time period. *See Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment" when the Plaintiff's only treatment was through medication that provided "some benefit"); *Parker v. Colvin*, No. 2:15-CV-316, 2016 WL 4435622, at * 5 (N.D. Ind. Aug. 22, 2016) (remanding where "[t]he ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate" without "ask[ing] Plaintiff about her physical therapy appointments or pain medication regime[n], and did not credit the pain medications Plaintiff did take").

Here, the ALJ cited to the Plaintiff's conservative treatment history as evidence that the Plaintiff is not as disabled as he claims. (*See* R. 28 ("However, the claimant's treatment records do not include any emergency room records or office visits to his family physician that center around acute exacerbations of back pain after work attempts.").) However, at the hearing, the

ALJ failed to inquire about such a failure to seek treatment for back pain. Therefore, the ALJ could not have determined whether the Plaintiff's failure to seek care was "justifiable." As such, holding a conservative treatment history against the Plaintiff's credibility was inappropriate.

The ALJ also cited the Plaintiff's daily living activities. An individual's daily activities are among the factors that an ALJ must consider in determining a claimant's RFC. *See Craft*, 539 F.3d at 660. But, the Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ noted that the Plaintiff can sweep and vacuum, seldom cook, use the internet, drive a car, grocery shop, walk around the block, attend his daughter's softball games, and perform basic financial management tasks such as counting change and handling a savings account. But, the ALJ failed to articulate why the Plaintiff's daily living activities were incompatible with his subjective testimony or how his daily living activities demonstrated that he could hold a full-time job. *See Pinder v. Astrue*, 2010 WL 2243248, at *5 ("Although objective medical evidence and daily activities are appropriate factors to consider, the ALJ failed to articulate how these factors supported or contradicted any particular claims made by the Plaintiff."). Thus, the Court finds that the ALJ did not build a logical bridge between the evidence and his conclusion that the Plaintiff's daily living activities reflected negatively on the Plaintiff's credibility.

The only remaining ground on which the ALJ relied in support of his conclusion is the lack of corroborating objective medical evidence supporting the Plaintiff's subjective testimony.

However, this cannot constitute substantial evidence. The Seventh Circuit, and this District, have rejected such an approach. *See, e.g.*, *Boyd v. Barnhart*, 175 F. App'x 47, 50 (7th Cir. 2006) (reversing and remanding for insufficient credibility determination where the Commissioner "defended the ALJ's decision by relying on the objective medical evidence, the testimony of the vocational expert, and a brief discussion of [the claimant's] daily living activities"); *Vercel v. Colvin*, No. 2:15-CV-81, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28, 2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (quoting SSR 96-7p at *6). In fact, "the whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, No. 1:13-CV-66, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014) (emphasis in original). Thus, the ALJ erred by failing to build a logical bridge between the evidence and its conclusions regarding the Plaintiff's credibility.

## CONCLUSION

Although the ALJ was not required to consider the Plaintiff's work history in evaluating his credibility, the remainder of the ALJ's credibility analysis is not supported by substantial evidence. Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on this issue, it need not consider the remainder of the parties' arguments.

SO ORDERED on March 5, 2018.

                                              s/ Theresa L. Springmann
                                              CHIEF JUDGE THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT